STATE of Maine

v.

Leland PHILBRICK.

Supreme Judicial Court of Maine.

June 5, 1979.

Charles K. Leadbetter (orally), Michael D. Seitzinger, Asst. Attys. Gen., Augusta, for plaintiff.

Smith, Elliott, Wood & Nelson by George F. Wood (orally), Terrence D. Garmey, Saco, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

POMEROY, Justice.

Indicted on September 8, 1977 on a single count of criminal homicide in the second degree (17–A M.R.S.A. § 202(1)(A) (Supp. 1976),[1] defendant, Leland Philbrick, was tried before and adjudged guilty by a jury in the Superior Court, York County. From the judgment entered on the verdict, defendant brings this appeal.

We sustain the appeal.

At trial, defendant related the following sequence of events leading up to the shooting of Charles Porterfield. On the morning of July 11, 1977 defendant left his home in Old Town, planning to visit his family in Saco before hitchhiking through New England. Stating that his brother enjoyed target practice, defendant included among other various items that had been packed for the trip, a loaded *"Charter Arms .44 Bulldog"* pistol. After several short rides and a brief stop-over in Freeport, defendant was picked-up by the decedent, who told him that Saco was not far out of the way and that he could probably take him there. After an uneventful trip, during which defendant slept on and off, the car reached Louden Road in Saco, not far from defendant's destination. Defendant claims it was at that point that the decedent first put his hand on defendant's knee. Defendant immediately removed it. This sequence was repeated several times before the decedent became more *"aggressive"* and began to fondle defendant's crotch. By that time, the car had reached Smutty Lane Road, defendant's destination. Becoming increasingly concerned, defendant asked to be let out, and finally reached over and stepped on the brake. The decedent thereupon *"attacked"* defendant, who, claiming he was no match for his larger opponent, reached into his knapsack and withdrew the pistol. A struggle for the gun ensued, during which at least three shots were fired. One of those shots struck the decedent on the right side of the skull and, according to expert medical testimony given at trial, caused his death.

At no point during the proceedings has defendant ever denied shooting Charles Porterfield. Rather, he asserts that he was justified in using whatever force was necessary, including deadly force, to protect himself against the forcible sexual advances of

---

1. 17–A M.R.S.A. § 202 (Supp.1976) reads in part here relevant:

 *1. A person is guilty of a criminal homicide in the 2nd degree if:*

 *A. He causes the death of another intending to cause such death, or knowing that death will almost certainly result from his conduct;*

the decedent.[2] In support of that defense, defendant sought a jury instruction based on 17–A M.R.S.A. § 108(2)(A)(2) (Supp. 1978), which allows a person to repel an aggressor with deadly force if he reasonably believes that such force is necessary and if he reasonably believes that the aggressor is committing or about to commit a *"forcible sex offense."*[3] The trial Justice, although agreeing with defendant that the issue of self-defense had been properly raised[4] and that an instruction pursuant to section 108 was therefore in order, disagreed with defendant concerning the proper construction of the phrase *"forcible sex offense."* Unwilling to accept defendant's contention that a forcible unlawful sexual contact, 17–A M.R.S.A. § 255 (Supp.1978), constituted a *"forcible sex offense"* within the meaning of section 108(2)(A)(2), the presiding Justice instructed the jury as follows:

> *Now, I instruct you that this case in considering the belief of something either being committed or about to be committed, a sexual contact either committed or about to be committed would not be a forcible sex offense. In other words, if you found that it was reasonable or that*

*the State had failed to prove to you beyond a reasonable doubt that it was not reasonable for the defendant to have believed that a forcible sexual contact was about to take place, that would not justify the use of deadly force.*

. . . . .

> *. . . if a mere touching of the genitals either through clothing or otherwise was all that one could reasonably believe had happened or would happen, then that could never provide justification for the use of deadly force.*

The trial Justice went on to further instruct the jury that, given the facts of this case, the defense of justification was open to defendant only if he reasonably believed that the decedent was committing or about to commit a forcible sexual act.[5] Defendant now argues that such an instruction amounted to reversible error.[6]

Defendant asserts two grounds in support of his construction of section 108: first, he argues that in light of the Code's failure to specifically define the phrase *"sex offense"*, one must look elsewhere for indicia of the phrase's meaning. He finds such indicia in

---

**2.** Defendant's argument is premised upon the position that the decedent's conduct constituted a violation of 17–A M.R.S.A. § 255(1)(A) (Supp.1978), which states in pertinent part:

> *1. A person is guilty of unlawful sexual contact if he intentionally subjects another person, not his spouse, to any sexual contact, and*
> *A. The other person has not expressly or impliedly acquiesced in such sexual contact;*

The phrase *"sexual contact"* is defined in 17–A M.R.S.A. § 251(1)(D) (Supp.1978) as *"any touching of the genitals, directly or through clothing, other than as would constitute a sexual act, for the purpose of arousing or gratifying sexual desire."*

We shall assume for the sake of argument that defendant's premise is true.

**3.** 17–A M.R.S.A. § 108 (Supp.1978) reads in pertinent part:

> *2. A person is justified in using deadly force upon another person:*
> *A. Where he reasonably believes it necessary and he reasonably believes such other person is:*
> *2. Committing or about to commit a kidnapping, robbery or a <u>forcible sex offense</u>*

*against himself or a third person.* [emphasis added].

**4.** *See State v. Millett,* Me., 273 A.2d 504 (1971).

**5.** *"Sexual act"* is defined in 17–A M.R.S.A. § 251(1)(c) (Supp.1978) as:

> *. . . any act of sexual gratification between two persons involving direct physical contact between the sex organs of one and the mouth or anus of the other or direct physical contact between the sex organs of one and the sex organs of another, or direct physical contact between the sex organs of one and an instrument or device manipulated by the other. . . .*

**6.** The State in its brief and at oral argument contended that defendant had failed to object to the trial Justice's instruction and thus failed to adequately preserve this point on appeal. *See* Rule 30(b), M.R.Crim.P. We have carefully reviewed the record and find that defendant made his position regarding the definition of *"forcible sex offense"* known to the trial Justice, who chose not to adopt it. Defendant thereby complied with the spirit of Rule 30(b) and thus preserved his point for appeal. *See State v. Thompson,* Me., 370 A.2d 650 (1977).

Chapter 11 of the Code. That Chapter, titled *"sex offenses"*, contains section 255, unlawful sexual contact. It necessarily follows, argues defendant, that an unlawful sexual contact committed by force, must be a *"forcible sex offense"* within the meaning of section 108(2)(A)(2). As his second point, defendant argues that had the Legislature wished to limit section 108 to those instances set forth in the trial Justice's instruction, it would have used the phrase *"forcible sexual acts"* and not *"forcible sex offenses."*

In response, the State sets forth three reasons why we should uphold the trial Justice's construction. Initially, the State argues that in light of 1 M.R.S.A. § 71(10)'s mandate that *"Abstracts of Titles, chapters and sections, and notes are not legal provisions,"* no significance can be placed on the fact that section 255 is to be found within a chapter titled *"sex offenses."* Next, the State maintains that the phrase *"forcible sex offense"* serves as a descriptive method of identifying those sexually oriented crimes that, by virtue of their definitional elements, necessarily involve force or threat of imminent kidnapping, serious bodily injury or death, *i. e.*, 17–A M.R.S.A. §§ 252(1)(B)(2) [7] and 253(1)(A)(2).[8] Finally, the State argues that one must read the phrase *"forcible sex offense"* in conjunction with the rest of the section. That is, that the phrase in question must be interpreted to apply to crimes of equivalent severity as kidnapping and robbery. Unlawful sexual contact, it is argued, even when committed with force, does not reach that level of severity.

■ As we have noted on numerous prior occasions, the cardinal rule in construing a statute is to ascertain the intendment of the Legislature. *State v. Hussey*, 381 A.2d 665,

666 (1978). Where, as here, the statute has failed to define a crucial term or phrase, our analysis must attempt to find a meaning consistent with the overall statutory context, as well as reflect the subject matter of the statute, its purpose, the occasion and necessity of the law and the consequences of a particular interpretation. *Town of Arundel v. Swain*, Me., 374 A.2d 317, 320–21 (1977); *Finks v. Maine State Highway*, Me., 328 A.2d 791, 798 (1974).

Section 108(2) reflects a societal judgment that certain interests are so valuable that they may be protected at the risk of the aggressor's life. Prior to the codification of our criminal law, that balance, in situations such as that now before us, weighed in favor of the non-aggressor only when he sought to protect himself against the imminent infliction of *serious bodily harm, or death*. *See State v. Cox*, 138 Me. 151, 23 A.2d 634 (1942). That aspect of the defense of justification was perpetuated by the Legislature when it enacted 17–A M.R.S.A. § 108(2)(A)(1), which allows a person to use deadly force to repel an aggressor who, in turn, is using deadly force—deadly force being defined as causing, or creating a substantial risk of causing death or serious bodily injury. 17–A M.R.S.A. § 2(8) (Supp. 1978). Had the Legislature intended merely to maintain the status quo with regard to the use of deadly force in defense of one's person, subsection (A)(1) would have been sufficient. It chose, however, to add subsection (A)(2), thereby reflecting a societal decision that the public's interest in being free from the threat of those crimes enumerated therein, specifically robbery, kidnapping and forcible sex offenses, outweighed the high value society otherwise

---

7. 17–A M.R.S.A. § 252(1)(B)(2) (Supp.1978) reads:

 *1. A person is guilty of rape if he engages in sexual intercourse:*
 *B. With any person, not his spouse, and he compels such person to submit:*
 *2. by threat that death, serious bodily injury, or kidnapping will be imminently inflicted on the person or any other human being.*

8. 17–A M.R.S.A. § 253(1)(A)(2) (Supp.1978) states:

 *A person is guilty of gross sexual misconduct*
 *1. If he engages in a sexual act with another person, not his spouse, and*
 *A. He compels such other person to submit:*
 *(2) by threat that death, serious bodily injury, or kidnapping will be imminently inflicted on such other person or on any other human being.*

places on human life. Our task is to determine whether an unlawful sexual contact committed by force falls within one of those categories.

We hold that it does.

We have little difficulty in finding that an unlawful sexual contact is a *"sex offense"* within the meaning of section 108. Notwithstanding the mandate of 1 M.R.S.A. § 71(1) that title abstracts are not legal provisions, we are persuaded by such other facts as the Legislature's decision *not* to include all *"sexually oriented"* crimes within Chapter 11, *see* e. g., § 851, and the repeated, unqualified reliance of other provisions upon Chapter 11 for definitional purposes, *see* e. g., §§ 301(1)(A) and 851(1) and (2)(B), that the Legislature intended the phrase *"sex offense"* to include all the conduct proscribed in Chapter 11.

We now turn to the question whether the addition of the term *"forcible"* to the phrase *"sex offense"* evidenced an intent to limit the defense of justification so as to exclude even those unlawful sexual contacts committed with force. The State argues that the phrase *"forcible sex offenses"* must be read to include only those crimes involving an inherent risk to the victim's life, *i. e.*, involving the risk of serious bodily injury or death. It reaches such a conclusion by relying on the references to that degree of harm in sections 252(1)(B)(2)[9] and 253(1)(A)(2),[10] as well as the inclusion of the crimes of kidnapping and robbery in section 108(2)(A)(2).

We disagree.

Initially, such a construction would necessarily render section 108(2)(A)(2) superfluous in that section 108(2)(A)(1), as noted above, *adequately encompasses those situations in which a person is threatened with serious bodily injury or death.* Furthermore, the close proximity of the crimes of kidnapping and robbery add little to the issue of the risk of harm facing a victim. In only one subsection of the kidnapping provision is there reference to serious bodily

injury. *See* § 301(1)(B)(1). In contrast, section 301(1)(A)(3) defines kidnapping as the restriction of a person's movements for the purposes of subjecting him to conduct as defined in Chapter 11. It is noteworthy that that subsection does not limit such reference to that conduct involving serious bodily injury or death. Finally, nowhere in the definition of robbery is there any reference to serious bodily injury, let alone death. Rather, section 651 only requires a showing of some *bodily injury*, defined by the Code as *"physical pain, physical illness or any impairment of physical condition."* 17–A M.R.S.A. § 2(5).

■ Given the inherent inconsistencies in the State's argument, we find the better construction to be that which requires that a sex offense be committed by force *in fact* before it constitutes a *"forcible sex offense"* within the meaning of section 108(2)(A)(2). Such a reading would eliminate the possibility of a person relying on those situations where the law implies force, for example, statutory rape, 17–A M.R.S.A. § 252(1)(A), but where there may not be force in fact, to invoke the defense of justification.

■ If the above construction is applied to the case now before us, it becomes clear that the trial Justice's charge to the jury was erroneous. Defendant argued that the decedent had committed a forcible unlawful sexual contact and that he was about to commit another. The jury should have been allowed to determine if that belief was reasonable, and if so, whether the use of deadly force was necessary to repel such an attack. Affirmative responses to both questions would provide legal justification for defendant's actions.

We recognize that our opinion today would allow a third party to use deadly force, provided the elements of reasonableness have been met, to repel a forcible unlawful sexual contact against another. Such a situation arises, however, as the direct result of a policy decision made by the Legislature. Whether or not that poli-

---

9. *See* note 7, *supra*.

10. *See* note 8, *supra*.

cy is wise, or whether the means employed by the Legislature to effectuate that policy are the best, is not for us to decide. *See State v. Fantastic Fair*, 158 Me. 450, 186 A.2d 352 (1962).

Defendant has also raised a second issue which he argues mandates the reversal of his conviction. In light of our resolution of his first point on appeal, we need not reach the second.

The entry is:

Appeal sustained.

Judgment set aside.

Remanded to the Superior Court for further proceedings not inconsistent with this opinion.

NICHOLS, J., did not sit.