**STATE of Maine**

v.

**Chris C. CADMAN, Sr.**

Supreme Judicial Court of Maine.

Argued March 12, 1984.

Decided May 25, 1984.

Rehearing Denied June 18, 1984.

Janet T. Mills, (orally), Dist. Atty., Auburn, for plaintiff.

Berman, Simmons & Goldberg, P.A., William Cote, (orally), Lewiston, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN, and GLASSMAN, JJ.

NICHOLS, Justice.

After the Defendant, Chris C. Cadman, Sr., was convicted in Superior Court (Androscoggin County) of gross sexual misconduct, 17–A M.R.S.A. § 253(1)(A), he appeal-

ed that conviction, contending he had been denied his right to a speedy trial "under the Maine and United States Constitutions."

We affirm the judgment of conviction.

In April, 1982, the complainant accepted an invitation from Gordon Lewis to a party at Taylor Pond. Her host and the Defendant (with whom the complainant had a slight acquaintance) drove her to that party in the latter's station wagon. Once at the party both the complainant and the Defendant, along with others, drank beer and smoked marijuana.

Later, when a number of the party-goers decided to visit a bar in Auburn, the complainant accompanied the Defendant in his station wagon. At some point en route the complainant took the wheel and the Defendant moved to the passenger seat. When the complainant turned off onto a dirt road in Minot, the station wagon became mired, and they could not extricate it.

Some time thereafter, when the couple had walked back to the paved highway and the complainant had flagged down a passing motorist, the complainant, crying hysterically, said that the Defendant had raped her. The motorist notified the police, and the complainant was taken to the hospital.

An investigating officer was sent to the hospital to question the complainant. She told the officer that the Defendant had raped her. Two days later, however, she signed a statement, prepared by the Defendant's girlfriend, saying that she willingly had sexual relations with the Defendant. She also attempted to drop the charges against the Defendant. On the next day she again spoke to the investigating officer and confirmed her earlier version of the events. She said that she had signed the statement and tried to drop the charges because the Defendant's friends had been pressuring her to do so.

The Defendant was indicted about one month after the Taylor Pond party, and at his arraignment on May 21, 1982, counsel was appointed to represent him. Although this case was repeatedly scheduled for trial in June, July, February and April, it was not actually reached for trial until June 1, 1983; on those earlier dates it was noted each time on the docket that the case had been "scheduled but not reached." Only in July, 1982, had the State moved for a continuance, and its motion had been denied. Ten months later the Defendant had moved to dismiss the indictment on the ground he was being denied a speedy trial, M.R. Crim.P. 48(b). His motion also had been denied.

At the trial, the complainant testified that she expected to ride to the Auburn bar with both the Defendant *and* Gordon Lewis, since those were the individuals with whom she initially came to the party, but that Lewis was otherwise occupied when the Defendant was ready to leave. She further testified that once they were alone together in the Defendant's vehicle, the Defendant began making sexual advances, which she at all times discouraged. At length, she demanded to take the wheel, because, as she explained, she felt she would have greater control over the situation. It was the Defendant's idea, however, for her to turn onto the dirt road. Being unfamiliar with the area, she complied.

She testified further that after the automobile became mired, the two of them quarreled, and the Defendant started making crude threats of sexual violence. He then chased her, dragged her onto the ground and raped her.

Following her to the stand, three witnesses, the motorist who drove her to the hospital, a registered nurse in the emergency room at the hospital and the investigating officer, all testified that the complainant gave them substantially the same narrative shortly after the events allegedly occurred. The State also introduced into evidence the complainant's muddied dress, to corroborate that the Defendant had dragged her on the ground.

On his part the Defendant countered by testifying that she voluntarily had sexual

intercourse with him but that she expected to be remunerated for her services. It was only when she found he had no money, he asserted, that she claimed she had been raped. To explain the soiled dress, five witnesses testified that the complainant had accidentally been knocked to the ground during the party at Taylor Pond. However, only one of those witnesses, Gordon Lewis, asserted that he had noticed that her dress became dirty as a result of her fall.

The jury found the Defendant guilty as charged.

■ In assessing the Defendant's single-issue challenge to his conviction, we note that the right of an accused to a speedy trial is guaranteed him by both our state and federal constitutions. Me. Const. art. I, § 6; U.S. Const.Amend. VI. Just as it is a fundamental rule of appellate procedure to avoid expressing opinions on constitutional questions when some other resolution of the issues renders a constitutional ruling unnecessary, *Jackson v. Inhabitants of Town of Searsport,* 456 A.2d 852, 854 (Me.), *cert. denied,* — U.S. —, 104 S.Ct. 95, 78 L.Ed.2d 101 (1983), a similar policy of judicial restraint moves us to forbear from ruling on federal constitutional issues before consulting our state constitution. *State v. Scarborough,* N.H., 470 A.2d 909, 913 (1983); *State v. Kennedy,* 295 Or. 260, 666 P.2d 1316 (1983).[1]

■ There is no deprivation of an accused's Fourteenth Amendment rights when we determine he has a remedy under our state constitution. It is only when we conclude that his claim under the state constitution fails, therefore, that we must then examine his conviction from a standpoint of federal constitutional law. Linde, *First Things First: Rediscovering the States' Bills of Rights,* 9 U.Balt.L.Rev. 379, 383 (1980).

Proceeding with that analysis, our state constitution, in Article I, section 6, ordains:

In all criminal prosecutions, the accused shall have a right ... to have a speedy, public and impartial trial. . ...

■ Prior to the promulgation of the Maine Rules of Criminal Procedure there had been a statute imposing certain time limits with reference to terms of court, 15 M.R.S.A. § 1201, implementing that constitutional guarantee, but that statutory provision was replaced by the more flexible standard of proscribing "unnecessary delay," a test which is embodied in M.R. Crim.P. 48(b). This rule now provides the mechanism for enforcing the constitutional right. *See State v. O'Clair,* 292 A.2d 186 (Me.1972).

■ The right to a speedy trial under our Constitution is necessarily a relative matter; whether such a trial has been afforded must be determined from the circumstances of the particular case. *See State v. Couture,* 156 Me. 231, 245, 163 A.2d 646, 655 (1960).

■ One such circumstance to be considered is the actual length of the delay. A delay that is conspicuously excessive would in itself be sufficient to violate the speedy trial guarantee, unless the State could establish mitigating circumstances (for example, evidence that the accused himself occasioned the delay). Here, however, little more than one year elapsed between indictment and trial. In this situation in order to prevail on a speedy trial challenge, an accused must be able to point to additional circumstances that indicate the absence of a speedy trial.

■ This Defendant has presented us with a record inadequate to make out any such circumstances. The Defendant failed to preserve in this record any demand for a speedy trial prior to the motion for dismiss-

---

1. On the priority thus accorded to state constitutions, *see generally* Carson, *"Last Things Last": A Methodological Approach to Legal Argument in State Courts,* 19 Willamette L.Rev. 641 (1983); Collins, *Reliance on State Constitutions—Away* *from a Reactionary Approach,* 9 Hast. Const. L.J. 1 (1981); Linde, *First Things First: Rediscovering the States' Bills of Rights,* 9 U.Balt.L. Rev. 379 (1980). *See also State v. Ball,* N.H., 471 A.2d 347 (1983).

al which he made shortly before trial. He also failed to produce any record of the state of the criminal calendar in Androscoggin County. We thus are left to speculate as to what caused the delay and as to whether it was a normal or an exceptional circumstance.

The Defendant asserts on appeal that he was prejudiced by the alleged delay, but, again, the record fails to bear him out. The Defendant argues that he was hurt in two ways. First, he claims that several of his witnesses were "unavailable" due to the delay. The record in no way lends credence to this assertion.

Second, he claims that some of his witnesses had memory lapses due to the delay. Although three of his witnesses did during cross-examination claim memory lapses, such lapses appear to have been trivial and did not damage the Defendant's case. None of the five witnesses whom he called exhibited any memory problems in their direct testimony. All remembered seeing the complainant being knocked to the ground at the party; all but one testified that they did not notice whether her dress became soiled as a result. It bears emphasis that the witnesses stated that they had not noticed the condition of her dress after her fall, rather than that they could not remember. The Defendant argues that his witnesses' credibility was damaged by their admissions of memory lapses. But any such credibility damage was slight compared with the credibility problems arising from the fact that they had consumed substantial amounts of beer or marijuana, or both, at the time of the events to which their testimony related and from the circumstance that each was a friend of the Defendant.

We conclude that the claim of prejudice to the accused is unsubstantial and speculative.

Having decided that the Defendant's denial-of-speedy-trial claim fails under state constitutional law, before we can affirm we turn to the issue of whether the State deprived the Defendant of his federal right to a speedy trial, in violation of the Fourteenth Amendment.[2] Under the federal constitution an analysis of an asserted deprivation of a speedy trial requires "a difficult and sensitive balancing process" utilizing four factors: the length of delay, the reason for delay, the Defendant's assertion of the right, and prejudice to the Defendant. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

The first factor, length of delay, is to some extent a triggering device for the balancing process. Unless the delay is long enough to be "presumptively prejudicial," there is no need to consider the other factors. *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2192. We have determined that in certain circumstances a delay as long as eight months is not presumptively prejudicial. *State v. Mahaney*, 437 A.2d 613, 620 (Me.1981).[3] On the other hand, we have recognized that the balancing process ought generally to be triggered whenever some delay is manifest. *State v. Lee*, 404 A.2d 983, 986 (Me.1979); *State v. Steeves*, 383 A.2d 1379, 1381–82 (Me.1978). A six-month delay, for instance, has triggered our use of the *Barker* analysis. *State v. Lewis*, 373 A.2d 603 (Me.1977).

In the case *sub judice* slightly over one year elapsed between the indictment and trial.[4] Since the case presented no special circumstances and was not particularly complex, the delay was sufficient to trigger the balancing process. Taking the delay as a factor to be weighed, however, it

---

**2.** The speedy trial guarantee of the Sixth Amendment is incorporated into the due process clause of the Fourteenth Amendment and thereby made applicable to the states. *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

**3.** *See also State v. Dudley*, 433 A.2d 711 (Me. 1981); *State v. Catlin*, 392 A.2d 27 (Me.1978).

**4.** Generally, delays are measured from the formal indictment or information. *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971).

is not helpful to the Defendant. A one-year delay is not excessive. *State v. Mahaney, supra,* 437 A.2d at 770 n. 7.

The reason for delay, as noted above, is not clear from the record. It appears to be attributable to a crowded docket, but the Defendant failed to produce any evidence of the state of the docket in Androscoggin County. Moreover, there is no evidence that the prosecution prompted the delay. Nevertheless, the reason for the delay must be weighed against the State, because the responsibility for an overcrowded docket rests with the government rather than with an accused. On the other hand, this reason may be weighed less heavily against the State than, for example, a deliberate attempt to hamper the defense. *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192.

According to the record, the Defendant pressed his right to a speedy trial only in his motion for dismissal shortly before trial. On the facts of the case before us this factor may be assigned a neutral weight.[5]

As for the fourth factor, we have fully explained above our reasons for concluding that the Defendant suffered no prejudice. *Cf. United States v. Ewell,* 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966) (defendant could point to no witnesses that had disappeared, no evidence that was lost). This factor must be weighed heavily against the Defendant. *See United States v. Cabral,* 475 F.2d 715 (1st Cir.1973).

▮ Having carefully weighed all four factors, we conclude that the Defendant's denial-of-speedy-trial challenge to his conviction must fail under federal constitutional law, as it fails under state constitutional law.

We need not, and do not, at this time express an opinion on whether the speedy trial guarantee of the Maine Constitution affords broader protection or less protection than its federal counterpart.[6] We decide merely that neither provision is broad enough to support this Defendant's claim on appeal.

The entry, therefore, will be:

Judgment affirmed.

All concurring.

---

5. *But see State v. Steeves,* 383 A.2d at 1383.

6. For decisions where we have found that rights guaranteed by Maine's Declaration of Rights *were more* protective than those granted by the federal Bill of Rights, *see, e.g., State v. Caouette,* 446 A.2d 1120, 1122 (Me.1982) (privilege against self-incrimination); *State v. Sklar,* 317 A.2d 160, 170 (Me.1974) (right to jury trial); *Danforth v. State Department of Health & Welfare,* 303 A.2d 794, 800 (Me.1973) (right to counsel in child custody proceedings).