STATE of Maine

v.

**Jerry LARRIVEE III.**

Supreme Judicial Court of Maine.

Argued June 7, 1984.

Decided Aug. 9, 1984.

Paul Aranson, Dist. Atty., E. Anne Catlin (orally), Laurence Gardner, Asst. Dist. Attys., Portland, for plaintiff.

Jackson & Pallas, Francis Jackson (orally), Westbrook, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

NICHOLS, Justice.

The appeal of the Defendant, Jerry Larrivee III, from a judgment entered in the Superior Court (Cumberland County) following his conviction of armed robbery, raises issues concerning the voluntariness of his confessions and whether there was sufficient evidence to require jury instructions on the defense of duress.

We affirm the judgment.

The Defendant and a friend, Jay King, visited Michael Farris, an inmate of the county jail in Portland, in December, 1981. There they delivered stolen goods to Farris, as it appears they had often done before. On this occasion it was also arranged that the Defendant and King would rob Dick and Patsy's Variety Store at North Windham and it was agreed that the two of them would divide the proceeds with Farris. About three days later, on December 9, at around 3:30 P.M. the Defendant and King drove to the variety store, and, while King waited in the car, the Defendant went up to the cashier, pointed a loaded pistol at her and demanded the money that was in the cash register. The cashier handed over to him about $180. He and King then drove away.

On October 26, 1982, an officer of the Gorham Police Department interviewed the Defendant in connection with the robbery. The Defendant agreed to take a polygraph examination at the Portland Police Department. Before taking the test nine days later the Defendant was read the *Miranda* warnings. He indicated that he understood those warnings and waived his rights. During the polygraph examination he denied committing the robbery. The officer conducting the test told him that the polygraph indicated he was lying. The Defendant then admitted to perpetrating the crime, first to this single officer and then, after the *Miranda* warnings were again read to him, to several other police officers. The Defendant insisted, however, that he had been motivated by fear of Farris.

On January 13, 1983, the Defendant was indicted and subsequently arraigned in Su-

perior Court. On April 28 he moved to suppress his confessions on the ground that they were involuntary. At the suppression hearing the Defendant called an expert witness who expressed an opinion that the polygraph test given to the Defendant was invalid because it was improperly administered. Furthermore, the Defendant and his father, who observed the test, both testified that the test administrator assured the Defendant prior to his confession that he could not be charged with a crime if he had been forced to commit it. However, the test administrator and two other officers who were nearby testified that the administrator never gave any such assurances to the Defendant. On the contrary, the test administrator said that he had told the Defendant that if the robbery was not his idea, that circumstance would be taken into account "because it was very important to the final conclusion of the case." At the end of the hearing the suppression justice concluded that the State had proved beyond a reasonable doubt that the Defendant's confessions were voluntary.

The Defendant was tried before a jury on October 13 and 14, 1983. The Defendant testified that he committed the robbery because Farris threatened that he would be "very sorry" if he failed to do so. Even though Farris was in jail, the Defendant believed that Farris was capable of physically harming him, either directly or through an agent. Based on Farris's past conduct on several occasions that the Defendant had either witnessed or heard about, the Defendant concluded that Farris was very dangerous and could be violent. The Defendant states that he believed that if he did not carry out the robbery he would be hurt "almost immediately."

At the close of the trial the Defendant requested the presiding justice to instruct the jury regarding duress. Concluding that such a defense had not been generated by the evidence, the justice declined.

Upon the Defendant's appeal to this Court he raises two issues. First, invoking the United States Constitution as well as the Maine Constitution, he asserts that his confessions should have been suppressed.

We must test that claim initially by our state constitution. That document, after all, has been the primary protector of the fundamental liberties of Maine people since statehood was achieved. If we conclude that his claim thereunder fails, we must then examine the failure to suppress from a standpoint of federal constitutional law. *State v. Cadman*, 476 A.2d 1148 (Me. 1984); Linde, *"First Things First:" Rediscovering the States' Bills of Rights*, 9 U.Balt.L.Rev. 379, 383 (1980).[1]

The Maine Constitution ordains that an accused "shall not be compelled to furnish or give evidence against himself ...." Me. Const. art. I, § 6. The State has the burden of proving voluntariness beyond a reasonable doubt. *State v. Collins*, 297 A.2d 620 (Me.1972).

A confession is inadmissible unless voluntary. *State v. Mikulewicz*, 462 A.2d 497 (Me.1983).[2] A trial court's determination that the State has met its burden will not be disturbed on appeal if there is evidence in the record that rationally supports it. *State v. Caouette*, 446 A.2d 1120, 1124 (Me.1982).

Here, the Superior Court found beyond a reasonable doubt that the Defendant's confession was voluntary. There is substantial evidence in the record to support that conclusion. Significantly, there is

---

1. *See also* Abrahamson, *Reincarnation of State Courts*, 36 Sw.L.J. 951 (1982); Pollock, *State Constitutions as Separate Sources of Fundamental Rights*, 35 Rutgers L.Rev. 707 (1983); Utter, *Freedom and Diversity in a Federal System: Perspectives on State Constitutions and the Washington Declaration of Rights*, 7 U.Puget Sound L.Rev. 491 (1984).

2. In *State v. Mikulewicz*, we indicated that a confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if, under all the circumstances, its admission would be fundamentally fair.

no evidence in the record of coercion, trickery or threat employed to induce the Defendant to incriminate himself. It was clearly within the purview of the trier of fact to accept the testimony of the police officers over that of the Defendant and his father. They testified that they never offered immunity to the Defendant or made any assurances, promises or threats. Furthermore, the statements the police did make to the Defendant were fully consistent with the law of Maine. Moreover, the Defendant never asserted any deliberate attempt by the authorities to improperly administer the polygraph test itself. Hence, the court's determination that the confessions were voluntary has sufficient support in the record to satisfy the requirement of Maine's constitution.

When we turn to freedom from self-incrimination guaranteed by Amendment V of the United States Constitution (made applicable to the states by Amendment XIV) we find that the prosecution has a lesser burden thereunder than that imposed by the constitution of our state. *See Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (proof of voluntariness by a preponderance of evidence adequate). Therefore, this Defendant's claim fails as well under federal constitutional law.

■ Second, the Defendant contends that the trial court erred in failing to instruct the jury on the defense of duress. A defense is generated to the point where a jury instruction is needed when a defendant has met his burden of going forward with evidence of such nature and quality as to raise the issue and justify a reasonable doubt of guilt. *State v. Inman,* 350 A.2d 582, 587 (Me.1976); *State v. Millett,* 273 A.2d 504, 507 (Me.1971). However, this Court has held that it is clearly not error to refuse to allow a jury to consider an impossible or impracticable theory which finds no rational basis in the evidence. *State v. Greenwald,* 454 A.2d 827, 830 (Me.1982);

*State v. Carmichael,* 405 A.2d 732, 736 (Me.1979).

Courts of other jurisdictions have similarly spelled out the standards whereby it is determined whether an issue has been generated. The Supreme Court of Rhode Island has recently held that a criminal defendant is only entitled to a charge that explains and informs the jury of those propositions of law which relate to material issues of fact which the evidence tends to support. *State v. Souza,* 456 A.2d 775, 778 (R.I.1983). Furthermore, the California court has ruled that a trial court must give a requested instruction only if the defendant proffers evidence sufficient to necessitate consideration by a jury. Otherwise stated, there must be evidence from which a jury composed of reasonable persons could have concluded that the particular facts underlying the instruction did exist. *People v. Barrick,* 33 Cal.3d 115, 654 P.2d 1243, 187 Cal.Rptr. 716 (Cal.1982). *See also State v. Johnson,* 320 N.W.2d 142, 147 (S.D.1982).

Here we address for the first time the question of what is required to generate the need for an instruction on the defense of duress.

The statute governing duress states in pertinent part:

1. It is a defense that, when a defendant engages in conduct which would otherwise constitute a crime, he is compelled to do so by threat of imminent death or serious bodily injury to himself or another person or because he was compelled to do so by force.

2. For purposes of this section, compulsion exists only if the force, threat or circumstances are such as would have prevented a reasonable person in the defendant's situation from resisting the pressure.

17–A.M.R.S.A. § 103–A.[3]

The determination of what constitutes a threat of "imminent" death or serious bodi-

---

**3.** This statute is based on section 2.09 of the Model Penal Code. Few decisions on generating the issue of duress, including those cited in the briefs, have been based on a similar statute.

ly injury should be predicated upon the reasonable opportunity for escape or surrender. "Imminent" means ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near. *People v. Victor,* 62 Cal.2d 280, 398 P.2d 391, 42 Cal.Rptr. 199, 211 (1965). Implicit in this concept of "imminent," therefore, is the opportunity to escape that harm. *See* W. LaFave & A. Scott, *Handbook on Criminal Law* § 49 at 378–79 (1972). The facts before us on this record do not indicate a genuine inevitability of "imminent death or serious bodily injury" to the Defendant. The Defendant had ample opportunity to flee, to seek help or to report Farris's threat to the authorities.

In view of the availability of all these options, which the Defendant apparently ignored, it cannot be said that he was ever in imminent peril. Read in the light most favorable to the Defendant, the record shows that he received no more than "a veiled threat of future unspecified harm," which will not ordinarily satisfy the requirement of imminent death or serious bodily injury. *United States v. Contento-Pachon,* 723 F.2d 691, 694 (9th Cir.1984).

Moreover, the Defendant freely chose to involve himself with Farris, whom he knew to be a dangerous and sometimes violent man, and with Farris's illegal activities. The Defendant's conduct both before and after Farris's alleged threat comes closer to suggesting a joint enterprise with Farris than submission to him.

Without sufficient evidence actually pointing to the duress that the Defendant had asserted, we conclude that the issue was not generated at trial in a fashion to require a jury instruction thereon.

The entry, therefore, must be:

Judgment affirmed.

All concurring.

*But see State v. Harrison,* 228 Kan. 558, 618 P.2d 827, 828 (1980).