2000 ME 119

**STATE of Maine**

v.

**Randolph LaPIERRE.**

Supreme Judicial Court of Maine.

Argued March 7, 2000.
Decided June 23, 2000.

Neale T. Adams, District Attorney, John M. Pluto, Deputy. Dist. Atty., (orally), Caribou, for State.

Daniel G. Lilley, (orally), Mark L. Randall, Law Offices of Daniel G. Lilley, P.A., Portland, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Randolph LaPierre appeals from a judgment of the Superior Court (Aroostook County, *Pierson, J.*) following a jury verdict convicting him of unlawful trafficking in scheduled drugs (Class B) in violation of 17–A M.R.S.A. § 1103(2) (1983 & Supp.1998) *amended by* P.L.1999, ch. 374, §§ 1 & 2, and conspiracy to traffick in scheduled drugs (Class C) in violation of 17–A M.R.S.A. § 151 (1983). LaPierre contends that the court erred in instructing the jury on lesser included trafficking offenses, 17–A M.R.S.A. § 13–A (1983), after originally instructing the jury only on the Class B trafficking offense. Because the challenged instruction may have misled the jury to convict on an inaccurate premise, we vacate the convictions.

## I. CASE HISTORY

[¶ 2] Evidence at trial could have supported the following findings: Ralph Dumond worked for Randolph LaPierre clearing a field during the summer of 1997. LaPierre paid Dumond in part with homegrown marijuana. Dumond also purchased marijuana from LaPierre, and LaPierre showed Dumond how to cultivate marijuana. Dumond visited LaPierre's mobile home in Van Buren and saw marijuana plants growing in small cups. He also noticed fluorescent lights in the attic.

[¶ 3] LaPierre went to Florida in the fall of 1997. LaPierre let Dumond and Dumond's girlfriend, Bertha Moore, stay in LaPierre's camp in Cyr Plantation. Moore left for Florida to live with her son in November 1997, and Dumond went to Florida shortly thereafter. Moore and Dumond visited with LaPierre in Florida. Dumond and LaPierre discussed the marijuana plants in LaPierre's mobile home in Van Buren. LaPierre asked Dumond to live at the mobile home in Van Buren and take care of the plants, but Dumond initially declined. By February 1998, Moore and Dumond had separated, and Dumond needed a place to live. Dumond agreed to rent LaPierre's mobile home in Van Buren for $300 per month and to care for the marijuana plants. LaPierre instructed Dumond to take cuttings and start new plants.

[¶ 4] When Dumond arrived at LaPierre's mobile home he saw a large number of plants, which he estimated at 350 to 500,[1] potting soil, fluorescent lights, cups, watering cans and hose, plant food, and trays. During a telephone call in March, Dumond and LaPierre discussed the rental amount and LaPierre told him to forget about the rent. In March and April, 1998, Dumond created approximately 200 new marijuana plants by transplanting cuttings. In mid-March, during a telephone conversation, LaPierre told Dumond to

---

1. Dumond first testified that he guessed the number of plants in one room of the mobile home to be "350, 400 plants." Later in his testimony he said there were "at least 500" and "about 500" plants in the mobile home.

leave the lights on all the time and to turn up the heat to foster growth of the plants. A summary of the electrical use at the mobile home showed a steady increase from the fall of 1997 through April 1998. LaPierre paid the power bill throughout this time in $200 increments.

[¶ 5] In December 1997, Moore called the Aroostook County Crime Stoppers from Florida. She reported that marijuana plants were being grown in LaPierre's mobile home in Van Buren. Moore called several additional times, including in late April 1998, when she stated that Dumond was living at LaPierre's trailer in Van Buren and that Dumond admitted to having 800 marijuana plants in LaPierre's mobile home.

[¶ 6] On April 30, 1998, police officers executed a search warrant of LaPierre's mobile home. The officers found and seized 758 marijuana plants in various stages of growth, plus other items including an electronic scale. Dumond was arrested and later released on bail. Dumond cooperated with the police and telephoned LaPierre. The conversation was recorded and the audio tape was played for the jury.

[¶ 7] LaPierre was charged by a two-count information, M.R.Crim. P. 7(b), with unlawful trafficking in scheduled drugs (Class B) and conspiracy to traffick in scheduled drugs (Class C). He pled not guilty and the matter eventually proceeded to trial.

[¶ 8] At the close of the evidence, the State requested an instruction on lesser included offenses. *See* 17–A M.R.S.A. § 13–A. The court denied the State's request. In count I of the information, LaPierre was charged with intentionally or knowingly trafficking in marijuana by growing or cultivating more than 500 marijuana plants, on or about April 30, 1998. *See* 17–A M.R.S.A. § 1103(2)(A).[2] The statute also made growing or cultivating 100 or more marijuana plants a Class C offense and cultivation of any amount of marijuana a Class D offense. *See* 17–A M.R.S.A. § 1103(2)(B) & (C).

[¶ 9] In its initial jury instructions the court told the jury that it must find LaPierre guilty of count I if the State had proven beyond a reasonable doubt that on or about April 30, 1998, in Aroostook County, LaPierre "intentionally or knowingly trafficked in what he knew or believed to be a scheduled drug, marijuana ... by growing or cultivating more than 500 marijuana plants." The court then defined several terms including trafficking which it stated: "means to make or create or manufacture or to grow or cultivate, to sell, barter, trade, exchange, or otherwise furnish for consideration or to possess with the intent to do any of the acts mentioned." This broader definition added a number of choices to the "growing and cultivating" element stated in the indictment. It may not have been significant at the time, and was not objected to, perhaps

**2.** The statute, in effect on April 30, 1998, read as follows:

1. A person is guilty of unlawful trafficking in a scheduled drug if the person intentionally or knowingly traffics in what the person knows or believes to be a scheduled drug and that is in fact a scheduled drug.....

....

2. Violation of this section is:

A. A Class B crime if the drug is a schedule W drug, if it is marijuana in a quantity of 20 pounds or more or if it is marijuana and the person grows or cultivates 500 or more plants;

B. A Class C crime if the drug is a schedule X drug, if it is marijuana in a quantity of one pound or if it is marijuana and the person grows or cultivates 100 or more plants;

C. A Class D crime if the drug is a schedule Y drug or a schedule Z drug.

17–A M.R.S.A. § 1103 (1983 & Supp.1998). This statute was amended in 1999, to delete the language regarding cultivation of marijuana. *See* P.L.1999, ch. 374, §§ 1 & 2. The crime of cultivating marijuana plants is now found at 17–A M.R.S.A. § 1117 (Supp.1999).

Marijuana is defined as a schedule Z drug. *See* 17–A M.R.S.A. § 1102(4)(B) (1983). The definition of "traffick," in effect on April 30, 1998, included "to grow or cultivate." 17–A M.R.S.A. § 1101(17) (Supp.1998), *amended by* P.L.1999, ch. 374, § 1.

because the jury was limited to the 500 or more alternative by the court's instruction.

[¶ 10] After defining other terms, the court restated that the State had to prove trafficking by showing that LaPierre engaged in "growing or cultivating" marijuana.

[¶ 11] The court then instructed on accomplice liability in a manner which suggested that guilt could be found if LaPierre was "an accomplice of someone who did *traffick or grow or cultivate* the marijuana" (emphasis added). The court then only addressed trafficking, without reference to the growing or cultivating qualification, in the remainder of the accomplice instruction. The court then stated, "Another element in this case is that there were more than 500 marijuana plants. So, an element of this case that the State has to prove to you beyond a reasonable doubt is that there were more than 500 marijuana plants." The court then instructed the jury on the conspiracy count.

[¶ 12] After approximately forty-five minutes of deliberation, the jury sent a note to the court which asked for the audio tape and cassette recorder so that the jurors could listen again to the taped telephone conversation between Dumond and LaPierre. After consulting with counsel, the court brought the jury back into the courtroom and the tape was played.

[¶ 13] About an hour later the court received another note from the jury asking for a written definition of trafficking. After a conference with counsel, the court brought the jury into the courtroom and stated an instruction on count I similar to that it had given initially, except that the court did not repeat the sentences quoted above concerning the 500 plants. Further, the broader, statutory definition of trafficking—possess with intent, etc.—was given twice. In the reinstruction, with regard to the 500 plants, the court stated that the charge was "growing or cultivating more than 500 plants." The court also reinstructed on accomplice liability. LaPierre objected to the accomplice portion of the reinstruction but made no other objection to the reinstruction.

[¶ 14] Approximately one-half hour later the jury sent a third note to the court. This note stated: "Does the definition of trafficking have to have a specific number of plants to be charged? We are hung up on the # 500." The court met with counsel, and the State again requested that the jury be instructed on the lesser included offenses of trafficking by growing or cultivating less than 500 plants and less than 100 plants. The court reconsidered its earlier decision and instructed the jury on the lesser included offenses. The reinstruction referenced the earlier trafficking definition, then indicated the jury could make choices to find "500 or more plants," "100 or more plants," "or less than 100." [3]

3. The third instruction stated:

The issue of the number of plants cannot come up unless you conclude beyond a reasonable doubt that the defendant has—that the State has proved to you beyond a reasonable doubt all of the elements of trafficking as I've defined it. And if the State has proved all the elements of trafficking, then the issue of the number of plants may be considered by the jury.
The jury is entitled to consider whether the State has proved to you beyond a reasonable doubt that the number of plants is 500 or more. Doesn't have to be an exact number, but it would have to be 500 or more. Or if the State has proved to you beyond a reasonable doubt all of the elements of trafficking, the jury could determine whether or not there are 100 or more plants or less than 100.
So if you go to the jury room, obviously if the State has failed to prove any element of the offense of trafficking, the number is irrelevant because he has to be acquitted. But if you find beyond a reasonable doubt that the State has proved trafficking, ... then you may determine whether or not the State proved beyond a reasonable doubt that there are 500 or more plants, 100 or more plants, or less than 100 plants.
So when you go back to the jury room, if you come upstairs and the clerk inquires, how do you find the defendant, guilty, he is charged in the indictment with 500 or more plants. If you determine guilty, I will then inquire, do you find 500 or more plants? And you answer yes or no. 100 or more

The "growing or cultivating" limitation was not stated when the number choices were given. LaPierre objected to instructing the jury on the lesser offenses, but he did not object to the substance of the instruction. Seventeen minutes after the third instruction, the jury returned with: (i) a guilty verdict on count I; (ii) a finding that the amount of plants was 500 or more; and (iii) a guilty verdict on count II.[4] The case was continued for sentencing.

[¶ 15] Before sentencing LaPierre made a motion for a new trial based on newly discovered evidence. See M.R.Crim. P. 33. An evidentiary hearing was held after which the court denied the motion. LaPierre was subsequently sentenced and noticed this appeal.[5] Because of our disposition of the jury instruction issue, we do not address the issues on appeal related to the motion for a new trial.

## II. JURY INSTRUCTIONS

[¶ 16] LaPierre argues that the court committed reversible error by instructing the jury on the lesser included offenses after initially refusing to do so. The question presented here is not whether the lesser included instruction was appropriate if it had been given initially. LaPierre does not argue that the evidence did not warrant such an instruction.

[¶ 17] For purposes of this appeal we shall assume, without deciding the issue, that a court may subsequently reinstruct a jury on lesser included offenses after refusing to do so in its initial general instructions. See, e.g., United States v. Welbeck, 145 F.3d 493 (2nd Cir.1998), cert. denied, 525 U.S. 892, 119 S.Ct. 212, 142 L.Ed.2d 174 (1998). However, any reinstruction must accurately state the law and not confuse the jury about the facts they must decide.

[¶ 18] "A jury instruction is erroneous if it creates the possibility of jury confusion and a verdict based on impermissible criteria." State v. Fitch, 600 A.2d 826, 828 (Me.1991). Furthermore, "[s]uch an error is harmless only if the court believes it highly probable that it did not affect the verdict." Id. Here, after the jurors announced they were "hung up" on the number of plants, the jurors were given instructions which suggested that any differing views about numbers were only to be addressed after they had decided guilt for trafficking—with reference back to the broad, statutory trafficking definition. Further, they were advised to make findings about the numbers with no reference to the necessary "growing or cultivating" finding that was essential for a finding of guilt for this trafficking charge.

[¶ 19] Jury instructions must be carefully tailored to the issues charged in the indictment and tried to the jury. An instruction accurately tracking the statutory language of a term in the Criminal Code may be erroneous where the instruction broadens the issues beyond those charged in the indictment and tried to the jury. See State v. McKinney, 588 A.2d 310, 312 (Me.1991). Such an instruction raises the possibility of jury confusion and

plants? And you answer yes or no. Or less than 100. Okay?

4. The jury retired to begin deliberations at 12:13 P.M. At 1:05 the court reconvened to discuss the first note from the jury, and at 1:11 P.M. the jury was brought back into the courtroom for the replaying of the audio tape. The jury left the courtroom at 1:21 P.M. At 2:15 the court received the second note from the jury and brought them into the courtroom at 2:16. The jury was reinstructed and left again at 2:23. At 2:51 the court reconvened to receive the third note, and the jury came

back into the courtroom at 3:03, when it was instructed on the lesser included offenses. The jury retired to the jury room at 3:08 P.M. and the court reconvened at 3:25 P.M. to take the verdict.

5. LaPierre was sentenced to four years incarceration, suspending all but two years, on count I. He was also sentenced to four years of probation and ordered to pay a fine of $16,000, plus surcharges and assessments. He was sentenced to two years incarceration on count II, to be served concurrently with count I.

a verdict based upon impermissible criteria. *Id., see also State v. Burns,* 560 A.2d 568, 569 (Me.1989).

■ [¶ 20] On review we must consider jury instructions in their entirety to determine whether they accurately stated the law to the jury. We must review the entire charge, or here, three charges, "taking into consideration the total effect created by all the instructions and the potential for juror misunderstanding." *State v. Varney,* 641 A.2d 185, 187 (Me.1994) (quoting *State v. Cote,* 462 A.2d 487, 490 (Me. 1983)).

■ [¶ 21] A reinstruction presenting for the first time choices for lesser included offenses not presented in the initial instructions, if proper at all, would be a rare event, only done in exceptional circumstances. If the court does reinstruct presenting lesser included offenses for the first time, it must accurately and separately state each of the elements of the greater and lesser offenses to avoid any potential for juror confusion, and it must specify that there are separate greater and lesser offenses among which a choice must be made. Not including an essential element or definition of an offense in an instruction is error where the element or definition is important to the issues in an instruction on an offense that is in reality being given for the first time. *See State v. Griffin,* 487 A.2d 247, 249 (Me.1984). *See also State v. Begin,* 652 A.2d 102, 106 (Me.1995).

■ [¶ 22] Thus, in this instance, a proper instruction would have advised the jury that they first had to decide the trafficking question, then if they found trafficking proven beyond a reasonable doubt, they "must" determine [6] whether the State had proven beyond a reasonable doubt that LaPierre was: (i) growing or cultivating 500 or more plants; or (ii) growing or cultivating 100 or more plants; or (iii) growing or cultivating less than 100 plants. Here, the jury was not advised that these determinations were elements of the separate offenses, nor were they advised that growing or cultivating was an essential finding for the aggravating factor specified in section 1103(2)(A) & (B). Because the jury had heard the broader definition of trafficking stated on several occasions, including the reference to possession, and factors other than the growing or cultivating limitation, this instruction, without the growing or cultivating limitation, and without clarifying the separate elements of the offenses at issue, was confusing.

[¶ 23] As instructed, the jury could have concluded that the actual number of plants was of little significance or they could have concluded that possessing [7] the plants was enough to support the more than 500 finding. On the evidence presented, the jury could have found possession without finding that LaPierre was himself actually growing or cultivating more than 500 marijuana plants as a principal or an accomplice.

■ [¶ 24] Because LaPierre was convicted of the most serious offense on an incomplete statement of the law, we are unable to conclude that it is highly likely that the jury's verdict was not affected by the incomplete reinstruction on the lesser included offense numbers. *State v. McKinney,* 588 A.2d at 312.[8] Consequently, we vacate the conviction on count I. Because count II, the conspiracy count is inextricably tied to count I, and also dependent on the more than 500 finding, the

---

**6.** The court's instruction had told the jurors that they "may determine" whether the State had proven the alternative numbers.

**7.** By the time of the final instruction, the jury had heard trafficking defined to include possession with intent to accomplish any acts listed in the statutory definition on at least three occasions.

**8.** In *McKinney,* we state that we: "encourage the trial court not to track the language of a statute in its instructions without careful consideration of the applicability of the language to the issues generated in the case that are being submitted to the jury."

conviction on count II must be vacated also.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.

CALKINS, J., with whom CLIFFORD, J., joins, dissenting.

[¶ 25] I respectfully dissent. The Court today announces a rule that requires a trial court, when instructing on a lesser included offense after a jury has begun deliberations, to state fully all of the elements of the lesser included offense, and restate the elements of the greater offense. I do not dispute the wisdom of advising the trial courts to so instruct in the future. I do, however, dispute that the instructions given in this case were so highly prejudicial, or so tainted the proceeding, that LaPierre was deprived of a fair trial. I conclude that the jury instructions given by the court, when viewed in their entirety, did not confuse the jury and did not lead to a verdict based on impermissible criteria.

[¶ 26] The trial court's instruction on count I began with an explanation of the charge against LaPierre, specifically that LaPierre is alleged to have "intentionally or knowingly trafficked in what he knew or believed to be a scheduled drug, marijuana, which is in fact a schedule Z drug, by growing or cultivating more than 500 marijuana plants." The court gave the statutory definition of trafficking and next told the jurors that the State had to prove beyond a reasonable doubt "trafficking by growing or cultivating more than 500 marijuana plants." After the court defined "intentionally" and "knowingly," the court repeated that the State had to prove that LaPierre was "trafficking by growing or cultivating marijuana" and that LaPierre "intentionally or knowingly grew it or cultivated it." The court then defined "accomplice" and referred to "trafficking, growing or cultivating marijuana." The court instructed: "So, the State has

charged that this defendant either actually trafficked as I've defined it for you or he was an accomplice of someone who did traffick or grow or cultivate the marijuana." When the court instructed on count II, the conspiracy charge, it said that the State had to prove that LaPierre agreed with Ralph Dumond and others to grow or cultivate more than 500 marijuana plants. The court repeated "grow or cultivate" twice more in the instruction on conspiracy. In all, the trial judge referred to "growing and cultivating marijuana" nine times during the initial instructions on the two counts. When LaPierre was asked by the court if he had any objection to these instructions, he said "No objections."

[¶ 27] In the first reinstruction the court used the broad definition of trafficking to include "sell, barter, trade, grow, cultivate or possess with the intent to sell, barter, trade, grow or cultivate." When the trial judge reinstructed on accomplice liability, however, he reminded the jurors, "I've defined trafficking as growing or cultivating." The only objection to this first reinstruction was to the accomplice portion and the only stated grounds were that the jury had not asked for a reinstruction on accomplice liability and the State had not charged accomplice liability.

[¶ 28] During the conference of counsel immediately before the final reinstruction, LaPierre objected to instructing on the lesser included offenses because: (1) jury deliberations had begun; (2) the court originally said that it would not give a lesser included offense instruction; and (3) the evidence did not warrant the instruction. He did not object to the substance of the instruction nor did he object on the ground that it was confusing.

[¶ 29] Although LaPierre now argues that the combined effect of the original instructions, plus the two reinstructions, made the instructions ambiguous and led to jury confusion, he did not object to the instructions on that basis at trial. We have held that when a party does not call

to the court's attention what he later claims to be error in jury instructions, we review the claim of error under obvious error standards. *See State v. Daniels*, 663 A.2d 33, 36 (Me.1995). Therefore, we do not grant LaPierre relief unless the error in the instructions is so highly prejudicial to LaPierre and so taints the proceedings as to virtually deprive him of a fair trial. *See State v. Varney*, 641 A.2d 185, 187 (Me.1994).

[¶ 30] The Court concludes that the trial court committed reversible error because when it instructed on the lesser included offenses, it did not state each element of the lesser offenses and repeat each element of the greater offense, even though it previously instructed on every element of the greater offense and previously defined terms applicable to the lesser offenses. The judge instructed on the lesser included offenses by telling the jury that in order to find guilt it had to find the State had proven all of the elements of trafficking "as I've defined it," and by explaining the number of plants. The number of plants is the only element that distinguishes the lesser included offenses from the greater offense.

[¶ 31] We do not view challenged jury instructions in isolation. *See State v. Varney*, 641 A.2d at 187; *State v. Wright*, 531 A.2d 1270, 1271 (Me.1987). Here, the instructions as a whole include the heavy emphasis on "growing or cultivating." It is apparent from the instructions, when viewed in their entirety, that the court told the jurors that LaPierre was guilty of the offense of trafficking only if they found that the State had proven beyond a reasonable doubt that LaPierre knowingly or intentionally grew or cultivated marijuana, or was the accomplice of someone who grew or cultivated marijuana. The court further told the jury that only if it found trafficking should it go on to determine the number of plants. I fail to perceive how the jury could have based its verdict on anything other than a finding that LaPierre grew or cultivated 500 or more marijuana plants, or was the accomplice of someone who did.