MAINE SUPREME JUDICIAL COURT                                      Reporter of Decisions
Decision:      2015 ME 18
Docket:        Cum-14-13
Argued:        November 5, 2014
Decided:       March 3, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.[*]

STATE OF MAINE

v.

ADAM DELANO

SAUFLEY, C.J.

[¶1]  Contending that there were two defects in the trial court's jury instructions, Adam Delano appeals from a judgment of conviction entered by the court (*Moskowitz, J.*) after a jury found him guilty of aggravated assault (Class B), 17-A M.R.S. § 208 (2014).  Delano argues that the court erred in (A) providing additional jury instructions, after the jury had already begun deliberations, regarding an alternative means of proving aggravated assault as a lesser included offense of the charged crime of elevated aggravated assault (Class A), 17-A M.R.S. § 208-B(1)(A) (2014); and (B) refusing to instruct the jury on a self-defense justification, *see* 17-A M.R.S. § 108 (2014).  We affirm the judgment.

---

[*]  Silver, J., sat at oral argument and participated in the initial conference but retired before this opinion was adopted.

## I. BACKGROUND

[¶2]   On September 16, 2012, the victim was residing in a tent at an encampment of homeless people at Thompson's Point in Portland.   Sometime between 9:00 p.m. and 10:00 p.m., he was called out of his tent and attacked, resulting in injuries that left him unconscious.   He suffered multiple facial, head, and chest injuries, including a skull fracture, bleeding in the brain, rib fractures, and a collapsed lung.   He spent roughly one month in the hospital, some of that time in a coma, as a result of the injuries.

[¶3]   Delano was charged by complaint with aggravated assault (Class B), 17-A M.R.S. § 208(1)(A), for the attack on the victim.   He was indicted in December 2012 on one count of elevated aggravated assault (Class A), 17-A M.R.S. § 208-B(1)(A).

[¶4]   The court held a four-day jury trial in September 2013 at which the victim testified that Delano and another individual had assaulted him.   Law enforcement personnel, including police responders and investigators, also testified at trial, as did eyewitnesses to part of the assault, witnesses to whom Delano had made incriminating statements, medical and forensic experts, and the other individual whom the victim had identified as an assailant, who testified that he was not present at the time of the events.

[¶5]  Although Delano did not testify, a video recording of a police interview with him was played for the jury.  In that video, Delano denied having assaulted, or even having seen, the victim on the night in question.  The only injury to Delano that the police observed was a swollen left hand.

[¶6]  After the close of evidence, Delano sought a self-defense instruction based in part on testimony from two eyewitnesses to the end of the assault.  They testified that they heard Delano yelling the following at the victim when the victim was already lying limp on the ground: "[Y]ou want to hit me?" and, "[F]uck you, I'm a kickboxer, I'm a fighter, you know, you don't take a swing at me, I'll show you."  In support of his request for a self-defense instruction, Delano also referred to testimony that he had told others that he had gotten in a fight with the victim, who had tried to rob him or had stolen from him.  One witness testified that Delano "just said that he had gotten into a fight with [the victim], that [the victim] tried to rob him, and about beer."  Another testified that Delano had said "that he beat his friend and he said that [the victim] had stolen money from him, that's the reason he did it."

[¶7]  The victim, the only person to testify about how the fight began, testified that he had been called out of his tent and immediately assaulted by Delano and another man.  Specifically, the victim testified that he came out of the tent "real quick" and "threw the backpack over and then . . . got kicked and

4

punched." When asked if he swung the backpack to protect himself, the victim testified that he "swung it to the left a little." The victim testified that his backpack may have contained clothes, toiletries, and possibly a couple of forty-ounce beers in glass bottles.

[¶8] The court declined to give the requested self-defense instruction because it determined that the evidence in the record did not support the instruction. The court noted that the eyewitnesses had observed only the end of the altercation when Delano was attacking and screaming at an already unconscious victim, and that the victim had identified Delano as the aggressor in the only testimony about how the altercation began.

[¶9] The parties made their closing arguments, after which the court instructed the jury on the charged crime of elevated aggravated assault, *see* 17-A M.R.S. § 208-B(1)(A) (imposing criminal liability if a person "[i]ntentionally or knowingly causes serious bodily injury to another person with the use of a dangerous weapon"), and two lesser included offenses: aggravated assault, *id.* § 208, and simple assault, 17-A M.R.S. § 207(1)(A) (2014). In its instructions, the court took into account the State's waiver of any attempt to prove the reckless commission of any of the lesser included crimes. 17-A M.R.S. §§ 207, 208. The court instructed the jury on one means of establishing aggravated assault—by proof that Delano intentionally or knowingly "cause[d] . . . [b]odily injury to

another *with use of a dangerous weapon.*" 17-A M.R.S. § 208(1)(B) (emphasis added). Although the State had requested an instruction on an alternative means of proving aggravated assault—through evidence that Delano intentionally or knowingly "cause[d] . . . *[s]erious* bodily injury to another," 17-A M.R.S. § 208(1)(A) (emphasis added)—and Delano expressly joined in that request, the court mistakenly did not instruct the jury on that alternative. After it completed the charge to the jury, the court gave counsel an opportunity, out of the jury's presence, to address any issues regarding its instructions. *See* M.R. Crim. P. 30(b). Counsel for the State noted that she had requested that the court instruct the jury on a different basis for aggravated assault, but then said, "at this point it's too convoluted with the jurors to go back and instruct them on that."

[¶10]  The jury began to deliberate at 12:40 p.m. on September 12, 2013. The jury requested reinstruction on several definitions, including the definitions of elevated aggravated assault, aggravated assault, and assault. The court sent written instructions on the three offenses to the jury at 3:45 p.m., and the jury left for the day at 4:27 p.m.

[¶11]  The next morning, the State moved for reinstruction on aggravated assault to include the instruction on the commission of aggravated assault by intentionally or knowingly causing serious bodily injury to another. *See* 17-A M.R.S. § 208(1)(A). Delano objected that the initial instructions had been

6

agreed to and delivered, and that the late reinstruction was improper. The court overruled the objection and issued a corrected instruction "because this is the court's error, this is not anyone else's error." The court stated that the instruction that it had given was inconsistent with the instruction requested by the State, and the court thereafter called the jury into the courtroom and reinstructed the jury. The court informed the jury that it was providing corrected instructions, and it took back from the jury the written instructions that had been provided the day before. The new instructions indicated, "the State can prove aggravated assault in either of two different ways," and described each alternative completely.

[¶12] After reinstruction and further deliberations that consumed nearly the entire day, the jury was unable to reach a unanimous verdict on the charge of elevated aggravated assault but found Delano guilty of the lesser included offense of aggravated assault. Although the court provided the jury with a verdict form, neither party requested that it distinguish between the two definitions of aggravated assault that, based on the reinstructions, the jury was entitled to consider. Following a sentencing hearing, the court sentenced Delano to eight years of incarceration, with all but five years suspended, and three years of probation. The court also ordered him to pay twenty-five dollars to the victims' compensation fund. Delano appealed from his conviction and applied for review of his sentence. *See* 15 M.R.S. §§ 2115, 2151 (2014); M.R. App. P. 2, 20. The Sentence Review

Panel denied his application for sentence review, and we now consider the issues he raises on appeal.

## II. DISCUSSION

### A. Jury Reinstruction

[¶13] Delano first challenges the reinstruction on aggravated assault. "A jury instruction is erroneous if it creates the possibility of jury confusion and a verdict based on impermissible criteria." *State v. LaPierre*, 2000 ME 119, ¶ 18, 754 A.2d 978 (quotation marks omitted). Although additional instructions on lesser included offenses delivered after a jury has begun deliberating are not per se prejudicial to a defendant, *see United States v. Welbeck*, 145 F.3d 493, 496-97 (2d Cir. 1998), only in exceptional circumstances is it acceptable for a court to reinstruct the jury by "presenting for the first time choices for lesser included offenses not presented in the initial instructions." *LaPierre*, 2000 ME 119, ¶ 21, 754 A.2d 978. When a court does reinstruct a jury, it must, as here, "accurately and separately state each of the elements of the greater and lesser offenses to avoid any potential for juror confusion, and it must specify that there are separate greater and lesser offenses among which a choice must be made." *Id.*

[¶14] Although we have not considered the precise nature of the prejudice that the defendant must demonstrate for a conviction to be vacated due to a late instruction, courts in other jurisdictions have identified three basic categories of

8

prejudice. First, a late reinstruction can deprive a defendant of an opportunity to present or argue the defendant's case. *See Welbeck*, 145 F.3d at 497; *Cheely v. State*, 850 P.2d 653, 662-63 (Alaska 1993); *State v. Thurmond*, 677 N.W.2d 655, 662 (Wis. Ct. App. 2004). Second, a defendant can suffer prejudice if the new instruction is flawed or incomplete. *See LaPierre*, 2000 ME 119, ¶¶ 21-24, 754 A.2d 978. Third, a late instruction can suggest to a jury that the court is encouraging a conviction. *See Welbeck*, 145 F.3d at 497; *Thurmond*, 677 N.W.2d at 662; *cf. Shuler v. United States*, 98 A.3d 200, 209 (D.C. 2014). When no prejudice is shown, the judgment of conviction will be affirmed. *See Shuler*, 98 A.3d at 209.

[¶15] Here, none of the three varieties of prejudice has been demonstrated, and no other type of prejudice has been shown. First, because Delano anticipated that the State's requested instruction would be given, Delano was not deprived of an opportunity to offer evidence or argument[1] on the issue of whether he caused serious bodily injury to the victim. Both the testimony elicited by the parties and the State's proposed jury instructions demonstrate that Delano and the State understood that the jury would consider the prosecution's theory of aggravated

---

[1] Because the appellate record does not include a transcript of the parties' opening statements and closing arguments, we cannot conclude that Delano was deprived of an opportunity to argue that the assault did not result in serious bodily injury.

assault resulting in serious bodily injury. The court's later action to correct the instructions did not result in the jury receiving any unanticipated instructions.

[¶16]  Second, the instructions that were ultimately given stated the law correctly. The instructions could not have led the jury to find guilt on an illegal basis.

[¶17]  Finally, we do not discern the third form of potential prejudice—the prejudice that arises when the jurors could construe reinstructions as coercive or as a recommendation by the court to return a guilty verdict on the newly presented charge. As with an examination of other forms of prejudice that may be generated by reinstruction, our inquiry must focus on the particular circumstances of this case. *See Welbeck*, 145 F.3d at 497.

[¶18]  In this case, the potential for prejudice in the form of improper influence created by the reinstruction arises from its timing. Thus, we address that timing in greater detail. Along with its other instruction requests, the State submitted a written request for the court to instruct the jury on the lesser offense of aggravated assault pursuant to section 208(1)(A). Counsel for Delano expressly joined in that request. The court told counsel that it had intended to include that instruction in its charge, but, as the court acknowledged the next day, it instead only instructed the jury that it could consider aggravated assault under section 208(1)(B) as a lesser included offense. After the court completed its initial oral

instructions to the jury, the State recognized the court's departure from its requested instruction but expressly waived any challenge to the omission of an instruction under 208(1)(A).[2]

[¶19] The jury deliberated for approximately a half day after the case was first submitted to it. During that time, the jurors sent a note to the court asking for the court's instructions on the definitions of elevated aggravated assault and aggravated assault. With the agreement of the parties, the court responded by providing the jury with written instructions covering the definitions. After an additional forty minutes of deliberations, it still had not returned a verdict, and the court recessed the jury until the next morning.

[¶20] The following morning, the State requested that the court instruct the jury on the definition of aggravated assault contained in section 208(1)(A), even though it had waived that request immediately prior to the commencement of deliberations the previous day. Over Delano's objection, the court granted the State's request, noting that the omission was simply an error, not the result of the court's decision to deny the request for the instruction. Following the discussion of the issue, and approximately one hour after the jury had resumed its deliberations on the second day, the court called the jurors into the courtroom and

---

[2] As counsel for the State explained at oral argument and as the record may be seen to suggest, she believed that the court had rejected the proposed instruction and intentionally declined to include it in the charge.

reinstructed them both on the charges that it had covered in its initial instructions and on the additional lesser offense of aggravated assault pursuant to section 208(1)(A). The jury then deliberated for the rest of the day. The jury was ultimately unable to reach a unanimous decision on the greater charge of elevated aggravated assault, but it returned a guilty verdict on the lesser charge of aggravated assault.

[¶21] The question presented here is whether, under these particular circumstances, the jurors reasonably could have construed the newly presented option of aggravated assault as defined by section 208(1)(A) as a recommendation from the court that they should return a guilty verdict on that offense. This question is a significant one because the court presented that alternative to the jury only after the jury had deliberated for an appreciable length of time on the first day, had been unable to reach a verdict on any of the options presented initially, and had begun a second day of deliberations. As noted, it was only after the jury resumed deliberations on that second day that the court gave the supplemental instruction that included a separate option: aggravated assault as defined by 208(1)(A).

[¶22] Given the totality of the circumstances, we are not persuaded that Delano was unfairly prejudiced by the timing of the reinstructions. An instruction on aggravated assault pursuant to section 208(1)(A) was clearly generated by the

12

evidence, and both parties initially affirmatively stated that they wanted the court to include it in its original charge. When the court gave the additional instruction to the jury regarding section 208(1)(A) the next day, the jury had not reported that it was at an impasse. The existence of a deadlock is a factor that is prevalent in the prejudice analysis because, when a court responds to a jury's report of an impasse by offering an additional charge for the jury to consider, "the stalled jury may regard the newly furnished theory of liability as the court's recommendation to resolve the impasse by agreeing to the lesser offense." *Welbeck*, 145 F.3d at 497. That is not the case here.[3]

[¶23]    Furthermore, when the court considered the State's request to reinstruct the jury on the second day of deliberations, Delano objected but did not articulate any specific form of prejudice that could result. The court then instructed the jury on the additional lesser offense but advised the jury that it was doing so because of "a slight error in the instructions we provided to you yesterday." The court thereby prefaced the reinstruction in a neutral manner that would help to dispel the notion that the new charge carried the court's implicit recommendation. The court did not call specific attention to the change, thus minimizing—as much as possible—the risk that evidence pertinent to the new

---

[3] Although the jury did ultimately reach deadlock on the charge of elevated aggravated assault, it did not do so until *after* the court provided its corrected instruction.

charge would be "magnif[ied]" in the jurors' eyes. *Thurmond*, 677 N.W.2d at 662 (quotation marks omitted). The court also replaced the written instructions it had provided to the jury during the first day of deliberations with revised instructions that included aggravated assault as set out in section 208(1)(A). This manner of providing the law to the jury, supplementing the oral reinstruction given in the courtroom, added clarity to the jurors' understanding of the law that would then serve as the framework for their deliberations. Finally, even after the jury was instructed on the new charge, it deliberated for the better part of the day before arriving at a verdict. This suggests that the jury continued to carefully consider the alternatives and that the timing of the court's introduction of a new charge for the jury's consideration was not an extrinsic influence on the jury's decision.

[¶24] Therefore, although the jury should have received the complete instructions before beginning deliberations, the record on appeal fails to demonstrate prejudice to Delano from the later reinstruction that would require us to vacate the judgment of conviction.

B.     Self-Defense Instruction

[¶25] Delano next argues that the court erred in denying his request for a jury instruction on self-defense. A defendant is deprived of a fair trial if a trial court fails to give a self-defense instruction "[w]hen the evidence is sufficient to raise the issue of self-defense." *State v. Thurston*, 2009 ME 41, ¶ 9, 969 A.2d 906.

Thus, instead of engaging in a standard harmless error analysis, we analyze the evidence to determine whether the instruction was generated in the first place. *Id.*; *see State v. Ouellette*, 2012 ME 11, ¶ 15, 37 A.3d 921.[4] A self-defense instruction is generated if the evidence, viewed in a light most favorable to the defendant with all reasonable inferences resolved in the defendant's favor, "is of such nature and quality to render the existence of all facts constituting the defense a reasonable hypothesis for the fact finder to entertain." *Ouellette*, 2012 ME 11, ¶ 13, 37 A.3d 921 (quotation marks omitted).

[¶26] As pertains to the matter before us, a person is justified in using *deadly* force upon another person "[w]hen the person reasonably believes it necessary and reasonably believes such other person is . . . [a]bout to use unlawful, deadly force against the person." 17-A M.R.S. § 108(2)(A)(1). "'Deadly force' means physical force that a person uses with the intent of causing, or that a person knows to create a substantial risk of causing, death or serious bodily injury." 17-A M.R.S. § 2(8) (2014).

---

[4] References to "obvious error" in some of our previous opinions reviewing preserved claims of error are somewhat misleading because the obvious error standard of review applies when a party has *not* preserved a claim of error. *See* M.R. Crim. P. 52(b); *State v. Herzog*, 2012 ME 73, ¶¶ 7-13, 44 A.3d 307 (applying the obvious error standard set forth in *State v. Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147, in reviewing an unpreserved argument that the court, in a nonjury trial, should have determined whether the evidence generated an issue of self-defense). Because Delano preserved his claim that a self-defense instruction should be given, we do not include reference to obvious error in setting forth the standard of review here.

[¶27]  With certain exceptions not applicable here, "[a] person is justified in using a reasonable degree of *nondeadly* force upon another person in order to defend the person . . . from what the person reasonably believes to be the imminent use of unlawful, nondeadly force by such other person" and "may use a degree of such force that the person reasonably believes to be necessary for such purpose." 17-A M.R.S. § 108(1) (emphasis added).  "'Nondeadly force' means any physical force which is not deadly force."  17-A M.R.S. § 2(18) (2014).

[¶28]  The evidence here did not generate a self-defense instruction, regardless of whether Delano used "deadly" or "nondeadly" force.  Viewed in the light most favorable to Delano, the evidence could support factual findings that the victim swung a backpack that contained clothes, toiletries, and possibly two forty-ounce beers in glass bottles when he was called out of his tent; Delano yelled comments at the victim suggesting that the victim had hit him; and Delano told others that he had gotten into a fight with the victim, who had tried to rob him or had stolen from him.  Neither this evidence nor any reasonable inferences that can be drawn from it support a reasonable hypothesis that the victim was "[a]bout to use unlawful, deadly force against" Delano.  *Id.* § 108(2)(A)(1).  Thus, any use of deadly force against the victim by Delano cannot be justified as an act of self-defense.  *See id.*

16

[¶29]  With respect to the use of nondeadly force, even if the victim did swing a full backpack when exiting his tent, which the evidence, viewed in Delano's favor, could suggest, it is not a reasonable hypothesis that the degree of force that resulted in the victim's extensive injuries was "a degree of such force that [Delano] reasonably believe[d] to be necessary" to defend himself. *Id.*  The undisputed evidence shows that the victim suffered multiple fractures to his head and ribs, and had a collapsed lung and bleeding in his brain.  The injuries resulted in a coma and approximately a month of hospitalization.  It is not a reasonable hypothesis that injuries this severe could have resulted from the use of a degree of force reasonably necessary to defend against a swung backpack, especially absent evidence of any injuries to Delano other than a swollen hand.  Nor does evidence of Delano's accusation that the victim attempted to hit him, made as Delano pummeled an unconscious victim, provide the kind of evidence that is "of such nature and quality to render the existence of all facts constituting the defense a reasonable hypothesis for the fact finder to entertain." *Ouellette*, 2012 ME 11, ¶ 13, 37 A.3d 921 (quotation marks omitted).  The court did not err in declining to instruct the jury on self-defense.

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Lauren Wille, Esq., DeGrinney Law Offices, Portland, for appellant Adam Delano

Stephanie Anderson, District Attorney, and Tracy J. Gorham, Asst. Dist. Atty., Prosecutorial District Two, Portland, for appellee State of Maine

**At oral argument:**

Lauren Wille, Esq., for appellant Adam Delano

Tracy J. Gorham, Asst. Dist. Atty., for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2012-6401
FOR CLERK REFERENCE ONLY